IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| JEREMY CLARK, as an individual, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FIRST ADVANTAGE ) <br> BACKGROUND SERVICES, ) <br> CORP., and John Does 1-10, ) <br> inclusive, ) <br> ) <br> Defendants. ) | CIVIL ACTION FILE NO. <br> _____ |

## COMPLAINT

Pursuant to Federal Rules of Civil Procedure 8 and 15(a)(1)(B), Plaintiff JEREMY CLARK (hereafter "Plaintiff") hereby files his Complaint for Damages and Demand for a Jury Trial against Defendants FIRST ADVANTAGE BACKGROUND SERVICES CORP., (hereafter as "Defendant" or "First Advantage"; and JOHN DOES 1-10 inclusive (hereinafter collectively as "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1. It is estimated that one in four adults in the United States have a criminal record of some kind and that more than ninety percent of all

employers in the United States perform criminal background checks on job candidates.[1]

2. Most employers are reluctant to hire people with conviction history. [2]

3. Existing law requires employers to consider certain relevant factors, including the age, nature and severity of a job applicant's criminal record and the duties to be performed, before making an adverse employment decision based on a person's criminal record.[3]

---

[1] NAT'L CONSUMER LAW CTR., BROKEN RECORDS: HOW ERRORS BY CRIMINAL BACKGROUND CHECKING COMPANIES HARM WORKERS AND BUSINESSES (Apr. 2012), *at* 3.  *See also* SOC'Y FOR HUMAN RES. MGMT., BACKGROUND CHECKING: CONDUCTING CRIMINAL BACKGROUND CHECKS, slide 3 (Jan. 22, 2010), *located at* http://www.slideshare.net/shrm/background-check-criminal (last visited on May 2, 2012); Ben Geiger, *Comment: The Case for Treating Ex-Offenders as a Suspect Class*, 94 CAL. L. REV. 1191, 1193 (2006).

[2] Harry Holzer, Steven Raphael & Michael A. Stoll, *Employer Demand for Ex-Offenders: Recent Evidence from Los Angeles*, Nat'l Crim. J. Ref. Svs. (March 2003), *available at* https://www.ncjrs.gov/App/Publications/abstract.aspx?ID=244705.

[3] *See generally* Equal Employment Opportunity Commission, Enforcement Guidance on the Consideration of Arrest and Conviction Records in employment Decisions Under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.* http://www.eeoc.gov/laws/guidance/arrest_conviction.cfm.

4. It is therefore imperative that criminal background check companies provide accurate, complete, and up-to-date information about a job applicant's criminal record.

5. To further this compelling interest, Congress (through the Fair Credit Reporting Act ("FCRA") under 15 USC § 1681 *et seq.*) enacted comprehensive legislation regulating the procurement and issuance of background check reports stating that "consumer reporting agencies have assumed a vital role" and that "there is need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 USC § 1681(a).

6. The FCRA requires a background check company to follow extremely stringent procedures to ensure that whenever criminal history information is reported, it is accurate, complete, and up to date.

7. Under 15 USC § 1681(b), a background check company "shall follow reasonable procedures to assure ***maximum possible accuracy*** of the information concerning the individual about whom the report relates." (Emphasis added).

8. In addition, when public record information, such as criminal history information is reported in the employment context, the background check company is required to "maintain *strict procedures* designed to insure that…[the information reported] is complete and up to date." 15 USC §1681(k)(a)(2). (Emphasis added).

9. In connection with the issuance of Plaintiff's consumer report, none of these mandates were followed. Defendant First Advantage disclosed erroneous criminal history information in Plaintiff's background check report that resulted in a loss of a valuable employment opportunity for Plaintiff.

## THE PARTIES

10. Plaintiff is an individual and resident of County of Cobb, State of Georgia, which is in this District and this Division. Plaintiff is a "consumer" under § 603(d) of the FCRA.

11. Defendant First Advantage is a consumer reporting agency, and is and at all times herein mentioned was, a Foreign Corporation registered to do business in the State of Georgia, with its principle place of business in Atlanta, Georgia. First Advantage is subject to the jurisdiction of this Court and may be served with process by serving its registered agent, Corporation

Services Company, at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30328.

12. For purposes of the FCRA, First Advantage is a "consumer reporting agency" as defined under 15 USC § 1681(a)(f) because it is a "person which, for monetary fees, dues…regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purposes of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing *consumer reports*." (Emphasis added).

13. Under 15 USC §1681(a)(d), a "consumer report" is "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, *character, general reputation, personal characteristics, or mode of living* which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for…employment purposes." (Emphasis added).

14. First Advantage's reports, including the background check report at issue in the present case, contain background information on

consumers regarding their general reputation, character, mode of living, or other personal characteristics. Among other things, First Advantage's reports typically include information regarding criminal histories.

15. First Advantage sells background check reports to, among others, prospective employers.

16. Plaintiff is ignorant of the Defendants sued herein as JOHN DOES 1-10, inclusive, and therefore, sues those Defendants by such capacities when such information is ascertained through discovery.

17. Plaintiff is informed and believes and thereon alleges that each of the JOHN DOES 1-10 Defendants are responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by such occurrences.

18. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, Defendants JOHN DOES 1-10, were principals or agents of each other and of the named Defendants and in doing the things alleged in this complaint, were acting in the scope of such agency and with the permission and consent of Defendants.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1331 because the claims asserted in this civil action arise under the laws of the United States, specifically the FCRA, 15 USC § 1681(p). Supplemental jurisdiction exists for the state law claims under

20. 28 USC § 1367.Venue lies properly in this District pursuant to 28 USC § 1391(b)(1) and this Division pursuant to Local Rule 3.1B(1)(a) and (3).

## FACTS

21. In February of 2020, Plaintiff applied to work with Arise Virtual Solutions, Inc. ("Arise") to provide call center services.

22. In connection with the application, Arise procured a consumer report on Plaintiff.

23. On February 25, 2020, Defendant forwarded, on behalf of Arise, a copy of the consumer report attached as Exhibit "1" stating that he was "NOT ELIGIBLE" for employment due to failed social security number verification.

24. Plaintiff's social security number was legally issued by the Social Security Administration and prior to this background screening, Plaintiff

never ran into any issues with his social security number verification by any other employer or screening company. As a result of this error, Plaintiff's start date was delayed and caused him to incur economic damages.

25. On March 18, 2020, Plaintiff disputed the information and the report was updated.

26. After this error was resolved, Defendant furnished a second screening report on Plaintiff with a new error that contained criminal convictions that do not belong to him. *See* Exhibit "2."

27. Although Plaintiff's full legal name is Jeremy Bryce Clark, Defendant disclosed the criminal convictions belonging to Mr. Jermayne Alexander Clark ("JAC"). Despite the clear differences in both the first and middle name, Defendant nevertheless decided to disclose JAC's conviction on Plaintiff's consumer report.

28. Defendant disclosed the following convictions: (a) 2015 Misdemeanor Harassment, (b) 2015 Misdemeanor Disorderly Conduct / Raucous Noise, (c) 2015 Misdemeanor for Contempt / Violation of No Contact / Protective Order and (d) 2016 Misdemeanor for Domestic Abuse with Intent to Inflict Serious Injury.

29.     As a result of the consumer report, Plaintiff was not hired by Arise.

30.     Plaintiff incurred economic losses, suffered from emotional distress and damage to his reputation.

31.     Based on credit information obtained from Experian using Plaintiff's social security number, Defendant knew that Plaintiff's full legal name is "JEREMY BRYCE CLARK." In fact, no known alias is disclosed by either Experian, Plaintiff, or Arise. Under no circumstances should Defendant associate Plaintiff with JAC, who has a completely different first and middle name than Plaintiff.

32.     Although Plaintiff's name clearly does not match the name JAC, Defendant stated, above every reported conviction on Plaintiff's consumer report that there was a full name and middle name match:

> *Full matched by the following identifiers: Last Name, First Name, DOB*
>
> *Developed matched by the following identifiers: Middle Name.*

(Emphasis in original). *See* Exhibit "2."

33.     Defendant's determination quoted in Paragraph 32 is patently false and is likely to mislead the reader as to the quality of Defendant's matching procedure.

34. Moreover, the criminal history information disclosed on the report is from Defendant's criminal records database and not from the courthouse. The background screening industry widely regards the practice of reselling criminal history information from database records to be non-compliant with the FCRA because these records are likely to be inaccurate, out of date, or incomplete. The best source of information is always the courthouse where the criminal record originates.  Here, the database records may have hidden inaccurate information that caused Plaintiff to be associated with JAC when a search of Plaintiff's name was conducted.

35. When Defendant conducted a more reliable and in-depth county-level search, no criminal record associated with Plaintiff was found. Nevertheless, Defendant chose to ignore this contradiction and chose to report information from its database without further review.

36. Any cursory review of the report prior to disclosure would have alerted Defendant that there was in fact no first or middle name match. The name "Jermayne Alexander Clark" is markedly different from "Jeremy Bryce Clark."

37. Accordingly, Plaintiff believes, and thereon alleges that Defendant routinely and systematically disclosed database records that it knew to be inaccurate, incomplete, or not up to date without verification and therefore, acted with reckless disregard of its duty under the FCRA to ensure the "maximum possible accuracy" of the information reported.

38. Plaintiff believes and thereon alleges that to the extent Defendant produces reports containing contradictory information – as the case here – and a more in-depth county-level search reveals no criminal records present, Defendant will choose to err on the side of disclosure. This results in systematic over reporting of criminal history information that is inaccurate and violates Defendant's duty under the FCRA.

39. Moreover, Defendant adjudicates its own reports and informs the employer whether the applicant is "eligible" or "not eligible" for employment. Here, based on second-hand information from its database, ignoring contradictory information revealed through its county-level search, and the clear lack of a name match, Defendant adjudicated the Plaintiff as "INELIGIBLE" for employment.

40. Defendant's actions in this case are a direct violation of the spirit of the FCRA that consumer reporting agencies should "exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 USC §1681(a)(4).

41. Based on Defendant's negligent and/or reckless conduct described above, Plaintiff suffered damages including economic damages, emotional distress, and damage to reputation. Plaintiff also seeks statutory penalties and punitive damages under 15 USC §1681(n) as well as attorney's fees and costs.

### FIRST CAUSE OF ACTION
### (Violation of 15 United States Code § 1681(e)(b))

42. Plaintiff is informed and believes and thereon alleges Defendant failed to use reasonable procedures to ensure the maximum possible accuracy of the information reported. Specifically, Defendant failed to use reasonable procedures to ensure that the reported information belonged to Plaintiff.

43. Defendant failed to use reasonable procedures to ensure that the correct social security information was reported in Plaintiff's first consumer report dated, February 25, 2020. *See* Exhibit "1."

44. The first requirement for identity matching within the background check industry is to ensure a first, middle, and last name match.

As one of the nation's largest background screening companies, Defendant is well aware of this requirement. However, as mentioned in Paragraphs 27 and 31, Defendant willfully, recklessly, or negligently violated the requirement by failing to use the most elementary of procedures to ensure the maximum possible accuracy of information was reported when Defendant produced Plaintiff's consumer report. 15 USC § 1681(e)(b).

45.    Defendant's violations entitle Plaintiff to damages pursuant to 15 USC § 1681(n), including statutory damages in the amount of not less than $100 and no more than $1,000, punitive damages, reasonable attorney's fees, costs, and any other relief granted by this court.

46.    Moreover, Defendant's violations entitle Plaintiff to damages pursuant to 15 USC §1681(o), including actual damages such as economic damages, emotional distress, and damages to his reputation, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgement against Defendants and each of them as follows as to all claims:

a. For a declaration that Defendants' practices violate FCRA, 15 USC §1681 *et seq.*;

b. For statutory, actual, compensatory, special, general, and punitive damages according to proof as applicable against all Defendants;

c. For interest upon such damages as permitted by law;

d. For an aware of reasonable attorneys' fees provided by law under all applicable statutes;

e. For the costs of the lawsuit;

f. For injunctive relief as applicable; and,

g. For such other orders of the Court and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests and demands a jury trial on all issues triable by jury.

This 15th day of July, 2020.

**McRAE BERTSCHI & COLE LLC**          */s/ Craig E. Bertschi*
Suite 200, 1350 Center Drive                    Craig E. Bertschi
Dunwoody, Georgia 30338                      Georgia Bar No. 055739
                                                                    ceb@mcraebertschi.com
*Counsel for Plaintiff*                                678.999.1102

Of Counsel:

Devin Fok (SBN #256599)
**DHF Law, APC**
16 N. Marengo Ave. Suite 403
Pasadena, CA 91101
Ph: (888) 651-6411
Fax: (818) 484-2023